NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SATAVA O., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,
C.O., J.O., A.O., G.O., *Appellees*.

No. 1 CA-JV 19-0407
FILED 5-19-2020

Appeal from the Superior Court in Yavapai County
No.  P1300JD201900055
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer PC, Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Lauren J. Lowe
*Counsel for Appellee, Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Kenton D. Jones and Judge D. Steven Williams joined.

---

**B R O W N**, Judge:

**¶1**　　　　Satava O. ("Mother") appeals the juvenile court's dependency order relating to her four children.　She argues no reasonable evidence supports the court's ruling.　For the following reasons, we affirm.

### BACKGROUND

**¶2**　　　　Mother and Devon O. ("Father") are the biological parents of C.O. (born in 2013), J.O. (born in 2015), A.O. (born in 2017), and G.O. (born in 2019) (collectively, "the children").　In July 2019, the Department of Child Safety ("DCS") filed an application for removal of the children after receiving a report that Mother had attempted suicide.　After the juvenile court granted the application, DCS took the children into custody.

**¶3**　　　　DCS then filed a dependency petition in August 2019, alleging the children were dependent as to Mother based on neglect due to her unmanaged mental health, as evidenced by her attempted suicide, as well as domestic violence between Mother and Father.[1]

**¶4**　　　　In September 2019, Mother filed a motion for return of the children pursuant to Arizona Rule of Procedure for the Juvenile Court 59 ('Rule 59").　DCS amended its dependency petition, alleging Mother neglected the children by failing to provide them with adequate medical care.　In particular, A.O. needed significant dental care, including a "baby root canal" for many of her teeth.

**¶5**　　　　The juvenile court held a three-day hearing addressing the Rule 59 motion together with the dependency petition.　After considering the testimony and exhibits, the court denied the Rule 59 motion but determined that DCS proved dependency of the children as to both parents by a preponderance of evidence based on neglect "due to domestic

---

[1]　　　DCS also alleged the children were dependent as to Father, but he is not a party to this appeal.

violence, Mother's unmanaged mental health and dental neglect." As pertinent here, the court explained:

> Mother's unmanaged mental health did cause her to neglect the children. Father failed to protect the children from the neglect caused by Mother's mental health issues, and he left the children in her care unsupervised. Mother is now fully engaged in services to manage her mental health, but there is no evidence that she can manage all of the children in home at this point.

Mother timely appealed the dependency order.

## DISCUSSION

¶6        We review a dependency order for an abuse of discretion. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015). We view the evidence in the light most favorable to upholding the court's order, and we will affirm unless no reasonable evidence supports the order. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005). As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

¶7        A dependent child is one adjudicated to be "[i]n need of proper and effective parental care and control and who has . . . no parent or guardian willing to exercise or capable of exercising such care and control," or one "whose home is unfit by reason of . . . neglect . . . by a parent." A.R.S. § 8-201(15)(a)(i) and (iii). Further, our statutes define neglect as "[t]he inability or unwillingness of a parent . . . to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a). Whether a child is dependent focuses on the circumstances existing at the time of the adjudication. *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 12 (App. 2016).

¶8        DCS has the burden of proving the allegations of a dependency petition by a preponderance of the evidence. *See* A.R.S. § 8-844(c)(1); *Shella H.*, 239 Ariz. at 50, ¶ 13. Here, DCS alleged in part that Mother had several mental disorders, including bipolar disorder, borderline personality disorder, and severe postpartum depression. Because of these issues, DCS alleged that "Mother's unmanaged mental health issues render her incapable of recognizing and meeting her own

needs, as well as the needs of the children. Any child in mother's care would be at a substantial risk of harm."

¶9 Mother argues no reasonable evidence supports the juvenile court's finding of dependency and therefore DCS did not meet its burden of proof. However, the court received testimony supporting each of its findings, including those related to Mother's mental health. The children were particularly vulnerable to Mother's unmanaged mental health because Mother often cared for the children alone as Father worked during the day; Father would also sometimes spend the night away when friction arose between himself and Mother. Father and Mother both testified regarding Mother's July 2019 suicide attempt, which took place when all the children were home. Mother's psychiatric mental health nurse practitioner evaluated Mother's mental health after the suicide attempt and confirmed that Mother had a major depressive disorder. DCS caseworkers also testified that Mother's unmanaged mental health made her unable to safely parent the children.

¶10 Mother argues that the allegations regarding her mental health were no longer relevant when the court held the hearing, but rather were "prior" issues on which the juvenile court could not base its findings. But the court received testimony on this issue as well. After the suicide attempt, Mother was assigned a family support services counselor, and beginning in August 2019 Mother met with the counselor every other week. The counselor testified that even though Mother had made significant progress, at the time of the hearing Mother had yet to reach her goals. Mother's nurse practitioner also testified that Mother was responding well to medication, but recognized that introducing four children into the house would be an increased source of stress.

¶11 Moreover, Mother's presentation of evidence suggesting she was ready to safely parent the children does not mean the juvenile court was obligated to rule in her favor. Instead, it was the court's role to weigh conflicting evidence and determine whether DCS had met its burden of proof; we do not reweigh that evidence on appeal. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002). We therefore conclude that reasonable evidence supports the court's finding of dependency based on Mother's unmanaged mental health. Accordingly, we need not address whether reasonable evidence supports the dependency order based on neglect due to domestic violence or the lack of dental care.

¶12 Mother also challenges the juvenile court's denial of her Rule 59 motion, but such an order is not appealable. *See Brionna J. v. Dep't of Child*

*Safety*, 247 Ariz. 346, 348, ¶ 1 (App. 2019).  Regardless, this issue is moot because the children were returned to Mother on March 4, 2020, as part of the ongoing dependency proceedings.  *See id.* at 351, ¶ 17.

## CONCLUSION

**¶13**        We affirm the superior court's finding of dependency.



AMY M. WOOD • Clerk of the Court
FILED:    AA